FILED
United States Court of Appeals
Tenth Circuit

**July 21, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

STEPHEN R. WHITTINGTON;
WHITTCO, INC., individually and on
behalf of others similarly situated,

      Plaintiffs - Appellants,

v.

CHIEF JUSTICE PETRA JIMENEZ
MAES; JUSTICE EDWARD L. CHAVEZ;
JUSTICE CHARLES W. DANIELS;
JUSTICE BARBARA J. VIGIL; JUSTICE
RICHARD C. BOSSON, in their Official
Capacities as Members of the NEW
MEXICO SUPREME COURT; and
ARTHUR W. PEPIN, in his Official
Capacity as Director of the NEW MEXICO
ADMINISTRATIVE OFFICE OF THE
COURTS,

      Defendants - Appellees.

No. 15-2122
(D.C. No. 2:13-CV-01167-JCH-WPL)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

The class-action plaintiffs, Stephen R. Whittington and Whittco, Inc.,

individually and on behalf of all others similarly situated (collectively, Plaintiffs),

challenge the constitutionality of New Mexico's electronic filing (e-filing) fee

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

structure. New Mexico's e-filing fee structure requires civil litigants who are represented by attorneys to pay mandatory e-filing fees each time they electronically file a document in district court. In the district court, Plaintiffs asserted that the e-filing fee structure suffers three constitutional infirmities: (1) it impermissibly burdens their First Amendment right to retain counsel; (2) it violates their Fourteenth Amendment right to access the courts; and (3) it violates their Fourteenth Amendment right to equal-protection. The defendants—members of the New Mexico Supreme Court and the Director of the New Mexico Administrative Office of the Courts (AOC) (collectively, Defendants)—moved to dismiss for failure to state a claim upon which relief can be granted, and the district court dismissed Plaintiffs' federal claims. The district court declined to exercise supplemental jurisdiction over Plaintiffs' state-law claims.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm. We hold that the e-filing fee burdens neither Plaintiffs' right to retain counsel nor their right to access the courts. Similarly, Plaintiffs' equal-protection claim also fails because Plaintiffs are not similarly situated to the narrow class of civil litigants who are not required to use the e-filing system.

BACKGROUND

A.    **New Mexico's E-Filing System**

In 2007, AOC entered into an agreement with Tyler Technologies, Inc. (Tyler) to develop electronic-case-management software for New Mexico state courts. In

2

2009, to enable the software-implementation process, the New Mexico Legislature enacted a statute permitting AOC to establish an e-filing system:

> [AOC] is authorized to enter into agreements with electronic filing companies to provide electronic services, collect the electronic services fees and remit those fees to the [AOC]. An agreement approved by the supreme court may further allow an electronic filing company to retain a portion of the electronic services fees collected and to remit the remainder of those fees to the [AOC] for deposit in the electronic services fund.

N.M. Stat. Ann. § 34-1-11(D) (West 2015). This statute further provided that "[t]he supreme court is authorized to establish by rule reasonable electronic services fees to cover the expense of providing electronic services to the public, including electronic document filing, access to electronic documents and ancillary services." *Id.* § 34-1-11(C).

Under this authority, the New Mexico Supreme Court negotiated a contract with Tyler to implement Tyler's Odyssey Case Management Software System. Tyler receives $3.70 of each $6.00 e-filing fee,[1] and $3.70 of each $4.00 electronic-service fee. Tyler delivers the remaining balance of each fee to AOC. AOC uses the remaining balance to defray the costs of operating and maintaining electronic-filing services and providing public access to electronic documents. The contract guarantees Tyler payment for 192,019 filing- and service-fee transmissions annually, which Plaintiffs allege results in annual payments to Tyler totaling $710,472. For all filings exceeding this required minimum, AOC receives a credit against the cost of

---

[1] Certain parties are required to pay a $6.00 filing fee for each electronic transmission of one or more documents filed in any single case. N.M. Dist. Ct. R. Civ. P. 1-005.2(E)(1).

3

any purchases of additional services or software from Tyler up to $500,000 with any amounts in excess of $500,000 deposited in the electronic services fund. AOC uses the electronic services fund to "defray[] the costs of operating and maintaining electronic filing services" and provide access to electronic documents in courts. *Id.* § 34-1-11(B).

The New Mexico Supreme Court adopted Rule 1-005.2, which "makes electronic filing mandatory for parties represented by attorneys in all civil cases, with the exception of domestic relations, domestic violence, sealed actions, habeas corpus or proceedings under the Children's Code." Appellants' App. at 8 (citing N.M. Dist. Ct. R. Civ. P. 1-005.2(B)(1)). For cases requiring e-filing, Rule 1-005.2 imposes a $6.00 filing fee for each electronic transmission of one or more documents filed in any single case. N.M. Dist. Ct. R. Civ. P. 1-005.2(E)(1). Only civil litigants using the e-filing system must pay the e-filing fee. Pro se litigants don't have to pay the e-filing fee, because, as Plaintiffs describe it, pro se litigants bring their documents to the clerk of court, who files the documents for them. In addition, represented civil litigants in metropolitan or magistrate courts don't pay the fee because the New Mexico Supreme Court does not require e-filing for those courts. The rule also exempts state entities and certain non-profit organizations from paying the e-filing fees. N.M. Dist. Ct. R. Civ. P. 1-005.2(E)(4), (M). Finally, upon a showing of good cause, the rule allows, without payment of any fee, attorneys to request an exemption from any requirements to electronically file documents. *Id.*

4

## B. Plaintiffs' Class-Action Lawsuit

Plaintiffs filed a class-action complaint in the United States District Court for the District of New Mexico, asserting claims under 42 U.S.C. § 1983. Specifically, Plaintiffs alleged that the e-filing system: (1) violates their "free speech rights by imposing filing fees upon [the Plaintiffs] for the exercise of their constitutional right to be represented by an attorney"; (2) "unconstitutionally infringed and placed a burden upon the Plaintiffs' right to access to the courts"; (3) violates Plaintiffs' equal-protection rights by distinguishing who pays the filing fees on the basis of whether a party is represented, the type of case, and the court system used; (4) violates the New Mexico Constitution's equal-taxation provisions; (5) violates the New Mexico Constitution's separation-of-powers clause; and (6) violates Article VI, Section 30 of the New Mexico Constitution, which requires that all fees collected by the judiciary be paid into the state treasury. Appellants' App. at 11.

Defendants moved to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The district court granted the motion and declined to exercise jurisdiction over Plaintiffs' supplemental state-law claims. Regarding the first federal claim, Plaintiffs' right-to-counsel claim, the court concluded that "the government action at issue is not a tax, but a fee charged for a service" and that "Plaintiffs have not alleged in their complaint how their right to retain counsel has been infringed." Appellants' App. at 65.

Next, the district court concluded that the appropriate test for Plaintiffs' access-to-the-courts claim was whether Defendants offered a rational basis for

5

imposing fees on litigants that used the e-filing system and that a rational basis existed for the e-filing fees. The district court stated that: (1) the e-filing fees "help defray the costs of making an electronic filing system available to litigants; thus, only the litigants who use the system should be required to pay for it"; (2) "it is rational for Defendants to require litigants, most of whom are seeking to validate economic interests, to bear the costs incurred by the State in administering the e-filing system"; and (3) "there is a rational basis in the Defendants' decision not to require litigants in magistrate and metropolitan courts to file electronically (and pay the associated fees) because the amounts of money at issue in those cases [are] less than in cases filed in district court." *Id.* at 68.

Further, the district court concluded that "Plaintiffs have not alleged that they, or anyone else, was actually denied access to the courts because of an inability to pay the electronic filing fees." *Id.* at 69. On this same point, the court reasoned that "[w]hen a litigant is able to supply the necessary funds to access the court, he cannot claim that he was denied access to the courts by fees that were too high." *Id*. To survive a motion to dismiss, the court concluded that "a plaintiff must plead facts to show that his right of access was actually hindered." *Id.*

Finally, the court concluded that it must dismiss Plaintiffs' equal-protection claim because "Defendants have stated a rational basis for not requiring pro se litigants or litigants in particular types of cases to file electronically and thereby incur electronic filing fees." *Id.* at 71. Addressing Plaintiffs' state law claims, the court declined to exercise its supplemental jurisdiction over them because they "raise

6

novel and complex issues of New Mexico law that are best left to the New Mexico courts." *Id.* Plaintiffs timely appealed.

DISCUSSION

On appeal, Plaintiffs assert the same arguments against dismissal as they made to the district court: (1) the e-filing fee is an impermissible tax on their right to retain counsel; (2) the e-filing fee is a tax that unconstitutionally burdens their right to access the courts; and (3) the classifications determining which litigants pay the fee are not rationally related to a legitimate state interest. We reject each of Plaintiffs' arguments.

## A.    Standard of Review

"We review a dismissal under Fed. R. Civ. P. 12(b)(6) de novo." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are insufficient. *Id.* at 555. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

7

Thus, in evaluating Defendants' motion to dismiss, we assume the veracity of Plaintiffs' well-pleaded facts, but we must "then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* Plaintiffs must allege facts sufficient to "raise a right to relief above the speculative level." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

## B.     Plaintiffs Have Standing

As a threshold matter, Defendants contend that Plaintiffs lack standing to pursue their claims because "[t]he District Court correctly recognized that [Plaintiffs] have not alleged that they have suffered any burden on their right to retain counsel," and "[w]ithout an allegation of actual injury, [Plaintiffs] have no standing to bring a claim for a violation of their First Amendment right to counsel." Appellees' Resp. Br. at 7. Further, Defendants assert that "[f]or the First Amendment's right to hire counsel to be infringed, a plaintiff must show the actual inhibition of an effort to retain counsel." *Id.* at 8. Defendants argue that Plaintiffs failed to allege actual inhibition of an effort to retain counsel.

Even though Defendants didn't raise this jurisdictional issue in the district court, "we are required to address [a standing] issue even if the court[] below [has] not passed on it and even if the parties fail to raise the issue before us." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230–31 (1990) (citation omitted). "[A] federal court [must] satisfy itself of subject matter jurisdiction before proceeding to the merits of a

8

claim—even when the question of the merits is the easier one and is substantively resolvable against the claim over which jurisdiction is in doubt." *Gold v. Local 7 United Food & Commercial Workers Union*, 159 F.3d 1307, 1309–10 (10th Cir. 1998), *overruled on other grounds by Styskal v. Weld Cty. Bd. of Comm'rs*, 365 F.3d 855, 858 (10th Cir. 2004). Thus, we address standing even though Defendants first raised the argument in their response brief.

"We review issues of standing de novo." *Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1072 (10th Cir. 2002). In doing so, we assume the "complaint is true and construe the allegations in favor of [the nonmoving party]." *Citizen Ctr. v. Gessler*, 770 F.3d 900, 909 (10th Cir. 2014). Constitutional standing has three elements: (1) injury in fact, (2) causation, and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "The party seeking the exercise of jurisdiction in his favor 'must allege in his pleading the facts essential to show jurisdiction.'" *Penteco Corp. Ltd. P'ship—1985A v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991) (quoting *McNutt v. Gen. Motors Acceptance Corp. of Ind., Inc.*, 298 U.S. 178, 189 (1936)). "Standing jurisprudence is a highly case-specific endeavor, turning on the precise allegations of the parties seeking relief." *State ex rel. Sullivan v. Lujan*, 969 F.2d 877, 882 (10th Cir. 1992) (alteration omitted) (quoting *Nat'l Wildlife Fed'n v. Hodel*, 839 F.2d 694, 703–04 (D.C. Cir. 1988)).

Here, Defendants contend that Plaintiffs failed to plead injury in fact. "Injury in fact involves invasion of a legally protected interest that is concrete,

9

particularized, and actual or imminent." *Citizen Ctr.*, 770 F.3d at 910 (citing *Lujan*, 504 U.S. at 560–61). "To establish 'injury in fact,' the plaintiff must show a 'distinct and palpable injury to itself.'" *State ex rel. Sullivan*, 969 F.2d at 881 (quoting *Glover River Org. v. U.S. Dep't of Interior*, 675 F.2d 251, 254 (10th Cir. 1982)).

Plaintiffs allege that their injury in fact is payment of e-filing fees in unrelated cases. In their complaint, Plaintiffs pleaded that "[a]s civil litigants in [a civil case in New Mexico district court] the Plaintiffs have been required to pay electronic filing fees, which are the subject matter of this proceeding." Appellants' App. at 7. Plaintiffs allege that they "are suffering irreparable injury for which there is no adequate remedy at law" because the court required them to pay e-filing fees. *Id.* at 9. Plaintiffs further alleged that "Defendants, while acting under color of state law, have violated and continue to violate the Plaintiffs' free speech rights by imposing filing fees upon them for the exercise of their constitutional right to be represented by an attorney." *Id.* at 11. Plaintiffs continued:

> The Defendants, while acting under color of state law, have unconstitutionally infringed and placed a burden upon the Plaintiffs' right to access to the courts by charging them separate filing fees for being participants in civil litigation in the state courts of New Mexico, whereas pro se litigants and attorney represented litigants in other civil cases are not charged those fees.

*Id.* Thus, we can resolve the standing issue by determining whether the payment of a fee constitutes injury in fact.

Paying a required fee establishes injury in fact. *See Schutz v. Thorne*, 415 F.3d 1128, 1133 (10th Cir. 2005) ("[T]he higher fee [a plaintiff] paid . . . is an actual, concrete

10

injury that the courts could remedy.") (citing *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 772–73 (2000)). For example, in *Figueroa v. United States*, 466 F.3d 1023, 1029 (Fed. Cir. 2006), the Federal Circuit Court of Appeals concluded that payment of a patent fee sufficed to constitute an injury in fact. There, a plaintiff argued that a statute's requiring him to pay fees before filing his patent application violated the Patent Clause of the United States Constitution. *Id*. at 1026. The court held that "Figueroa suffered an injury-in-fact from actually paying patent fees. This injury is both traceable to the challenged conduct of charging fees in excess of that required to fund the [Patent and Trademark Office] and redressable by a judicial award of a refund upon a finding that this conduct was unconstitutional." *Id. Figueroa* is consistent with our precedent holding that pecuniary loss is an injury in fact. *See Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1155 (10th Cir. 2005) (citing cases concluding that pecuniary loss is a sufficient injury in fact); *Salem Inn, Inc. v. Frank*, 522 F.2d 1045, 1047 n.10 (2d Cir. 1975) (concluding that the standing inquiry is satisfied where a plaintiff suffered economic loss by complying with a challenged ordinance).

Here, Plaintiffs pleaded injury in fact by alleging that the New Mexico district courts required them to pay $6.00 for each e-filing transmission. As in *Figueroa*, Plaintiffs' injury in paying e-filing fees is traceable to the challenged conduct of charging e-filing fees and redressable by a judicial award of a refund. Defendants contend that Plaintiffs lack standing because they fail to allege that the e-filing fee hindered their ability to seek counsel or to obtain access to the courts by preventing

11

them from filing documents. But this goes to the merits of those claims—whether the statute is an impermissible burden on Plaintiffs' right to counsel—not Plaintiffs' standing.

Further, Defendants do not dispute that the e-filing system required Plaintiffs' payments or that changing the statute, eliminating the fee structure, or refunding the fees would redress this alleged grievance. Thus, because Plaintiffs' challenge meets the three constitutional standing requirements, we are satisfied that Plaintiffs have standing. Accordingly, we turn to the merits of their claims.

**C.    The E-Filing Fee Does Not Unconstitutionally Burden Plaintiffs' First Amendment Right To Retain Counsel**

Plaintiffs argue that the e-filing fee unconstitutionally burdens their First Amendment right to retain counsel—a right that Plaintiffs contend falls within their rights to freedom of speech and assembly. According to Plaintiffs, the e-filing fee is an improper tax on the exercise of their right to retain counsel because only litigants represented by counsel must pay the fees. We disagree. We conclude that regardless of whether the e-filing fee is a tax or a fee, N.M. Dist. Ct. R. Civ. P. 1-005.2 does not unconstitutionally burden Plaintiffs' right to retain counsel.

No one has a constitutional right to appointed counsel in civil cases. *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989). But we acknowledge that the "right to retain and consult with an attorney . . . implicates . . . clearly established First Amendment rights of association and free speech." *DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir. 1990). Plaintiffs argue that the e-filing fees impermissibly burden

12

these First Amendment rights. Therefore, we must determine whether the e-filing fee is a permissible fee.

The Supreme Court has addressed the constitutionality of governmental fees assessed in connection with expressive activities protected by the First Amendment, such as fees charged to hold rallies or parades. *See Cox v. New Hampshire*, 312 U.S. 569, 577 (1941) (upholding permit requirements for a parade and procession on city streets); *Kwong v. Bloomberg*, 723 F.3d 160, 165 (2d Cir. 2013) (discussing Supreme Court cases regarding the constitutionality of governmental fees assessed in connection with activities protected by the First Amendment). Courts have repeatedly upheld fees related to numerous constitutional rights, including fundamental rights such as those included in the First and Second Amendments. *See Cox*, 312 U.S. at 577; *Kwong*, 723 F.3d at 167 (holding that the city's $340 residential handgun licensing fee did not impose unconstitutional burden on the exercise of Second Amendment rights); *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty.*, 274 F.3d 377, 395 (6th Cir. 2001) (upholding licensing and fee requirements on adult-entertainment businesses even though licenses and fees burden First Amendment rights); *see also Murdock v. Pennsylvania*, 319 U.S. 105, 116 (1943) (concluding that a state may charge a fee as a precondition for soliciting only where that fee is "calculated to defray the expense" of protecting the public from abusive solicitors).

Governmental entities may impose fees on the exercise of First Amendment rights if the fee is designed "to meet the expense incident to the administration of the

13

act and to the maintenance of public order in the matter licensed." *Cox*, 312 U.S. at 577. If the fee is imposed as a regulatory measure and calculated to defray the expense incurred, it does not violate the Constitution. *Murdock*, 319 U.S. at 116; *see Ne. Ohio Coal. for the Homeless v. City of Cleveland*, 105 F.3d 1107, 1109–10 (6th Cir. 1997) ("The lesson to be gleaned from *Cox* and *Murdock* is that an ordinance requiring a person to pay a license or permit fee before he can engage in a constitutionally protected activity does not violate the Constitution so long as the purpose of charging the fee is limited to defraying expenses incurred in furtherance of a legitimate state interest.").

In this case, New Mexico has a legitimate state interest in providing e-filing to its litigants. New Mexico is providing a valuable service to its civil litigants and an equally valuable service to the general public by making these documents easier to access. Thus, we must determine whether New Mexico's purpose in charging the e-filing fee is limited to defraying expenses incurred in furtherance of its legitimate interest.

The New Mexico e-filing fee is a regulatory measure intended to defray the expense of the e-filing system. Plaintiffs concede that the cost of converting the New Mexico courts to the electronic system exceeded $5,000,000. New Mexico uses its e-filing fee to recoup this cost and to pay for the ongoing costs of providing the e-filing service to its users. Tyler retains $3.70 of each $6.00 e-filing fee for the initial cost of the system. The remaining balance is returned to AOC who uses the money to obtain more services and software from Tyler and to provide money for the electronic

14

services fund. New Mexico uses the electronic services fund to "defray[] the costs of operating and maintaining electronic filing services and providing public access to electronic documents in appellate, district, metropolitan and magistrate courts." N.M. Stat. Ann. § 34-1-11(B). Thus, New Mexico and the AOC use the e-filing fees to administer and maintain the e-filing system. Under these circumstances, the e-filing fees are constitutional. *See Cox*, 312 U.S. at 577.

**D.  The E-Filing Fee Does Not Unconstitutionally Burden Plaintiffs' Right of Access to the Courts**

Plaintiffs contend that the e-filing fee unconstitutionally burdens their Fourteenth Amendment right of access to the courts. "The Supreme Court has upheld, in the face of due process challenges, various statutory burdens on a [party's] access to court." *In re South*, 689 F.2d 162, 165 (10th Cir. 1982). A court must "balance the interests of the state against the interests of individuals to determine whether the strictures of due process are satisfied." *Id.* As we have explained, "[t]he constitutionality of the filing fee . . . turns on whether the fee 'unduly' burdens [a party's] access to the judicial process, which in turn is determined by balancing the interest [the party] seeks to assert in court against the government's interest in exacting the fee." *Id.*

Here, Plaintiffs fail to argue that the e-filing fee is unconstitutionally burdensome, and they fail to allege how the fee hindered their access to the judicial process. "T[he] right of access to the courts . . . is neither absolute nor unconditional." *Id.* at 165 n.4 (quoting *In re Green*, 669 F.2d 779, 785 (D.C. Cir.

15

1981), *overruled on other grounds as recognized in Hurt v. Soc. Sec. Admin.*, 544 F.3d 308, 310 (D.C. Cir. 2008)). Instead, Plaintiffs claim the fee burdened their right of access to the courts in civil litigation only because pro se litigants are not charged the same fees. Except for the narrow exception of cases involving fundamental interests, such as those involving the right to marry or exercise parental rights, the Supreme Court has evaluated court-fees cases under the rational-basis standard, and it has declared that "[t]he State's need for revenue to offset costs, in the mine run of cases, satisfies the rationality requirement." *M.L.B. v. S.L.J.*, 519 U.S. 102, 123 (1996); *see id.* at 124 (holding that when termination of parental rights are at issue, parties cannot be denied access to the courts because of their inability to pay); *Boddie v. Connecticut*, 401 U.S. 371, 374 (1971) (holding that due process required access to the courts for filing divorce proceedings, regardless of the ability to pay). This case does not implicate constitutional interests like the right to marry or termination of parental rights—it is more analogous to bankruptcy and welfare decisions. Here, the e-filing fee applies to civil litigants who are most frequently attempting to litigate economic interests, similar to bankruptcy and welfare cases. *See United States v. Kras*, 409 U.S. 434, 444–45 (1973) (holding that courts could require indigents seeking welfare to pay a filing fee); *Ortwein v. Schwab*, 410 U.S. 656, 659–60 (1973) (upholding filing fee for welfare recipients who challenge adverse welfare decisions because welfare payments are of "far less constitutional significance than the interest of the *Boddie* appellants" and did not implicate fundamental constitutional rights).

16

Under rational-basis review, a regulation "must be upheld . . . if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). Thus, we will uphold the e-filing fee-structure "if it is rationally related to a legitimate government purpose or end." *Teigen v. Renfrow*, 511 F.3d 1072, 1083 (10th Cir. 2007) (quotation marks omitted).

This court has followed the Supreme Court's lead in concluding that filing fees generally survive rational-basis review. In *In re South*, we upheld a $60 filing fee for creditors in bankruptcy proceedings, concluding that "contractual rights—economic interests—have 'far less constitutional significance than the interest of the *Boddie* appellants.'" *In re South*, 689 F.2d at 165 (quoting *Ortwein*, 410 U.S. at 659). We credited the government's interests in imposing the fee to help pay for the bankruptcy system, and we concluded that "the fee ensures, to some minimal degree, that creditors are genuinely contesting discharge rather than seeking to harass the debtor." *Id.* at 165–66.

Here, like *In re South*, New Mexico's need for cost recoupment of the expense is enough. *See also Brown v. Leavenworth Cty.*, 324 F. App'x 720, 726 (10th Cir. 2009) (unpublished) (Kansas's need for recoupment of the expense of service of process does not create an undue burden on the plaintiff's access to the court). The e-filing fees are necessary to reimburse New Mexico for the cost and maintenance of the e-filing system. Thus, the district court appropriately dismissed Plaintiffs' access-to-the-courts claim.

17

**E.     The E-Filing Fee Does Not Unconstitutionally Burden Plaintiffs' Equal-Protection Rights**

Finally, Plaintiffs argue that the e-filing fee violates the Fourteenth Amendment's Equal Protection Clause. This claim fails because Plaintiffs are not similarly situated to pro se plaintiffs or other parties that are not required to pay the e-filing fee.

Specifically, Plaintiffs challenge "[t]he classification . . . requiring litigants who are represented by attorneys in certain civil litigation to pay electronic filing charges where pro se litigants involved in the same litigation are not." Appellants' Opening Br. at 20. But, Plaintiffs cannot show that they are similarly situated to pro se parties who are not required to pay the e-filing fee. As we have explained, regardless of the level of scrutiny applied, "to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them." *Brown v. Montoya*, 662 F.3d 1152, 1172–73 (10th Cir. 2011) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998)). We may properly dismiss an equal-protection claim where the plaintiffs have failed to allege that they were treated differently from those similarly situated. *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1257 (10th Cir. 1998); *see Jennings v. City of Stillwater*, 383 F.3d 1199, 1214–15 (10th Cir. 2004) (dismissing a plaintiff's equal-protection claim in part because "she failed to make an adequate showing that similarly situated persons were treated differently").

18

Plaintiffs' equal-protection claim fails because they cannot show that they are similarly situated with pro se plaintiffs. In litigation, pro se parties are treated differently from represented parties. For example, we must liberally construe a pro se litigant's filings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). We do not hold pro se litigants to the same stringent standards as apply to formal pleadings drafted by lawyers. *Id*. Other courts have had no difficulty explaining why formally represented parties must comply with e-filing even though pro se litigants need not. *See, e.g.*, *Greenspan v. Admin. Office of the U.S. Courts*, No. 14cv2396 JTM, 2014 WL 6847460, *7 (N.D. Cal. Dec. 4, 2014) (unpublished) ("While virtually every attorney has access to computer technology . . . , a number of pro se litigants lack access to a computer (i.e. individuals who may be incarcerated, economically distressed, or intellectually challenged) or the skills needed to maneuver through the electronic case filing system."); *Johnson v. Pullman, Inc.*, 845 F.2d 911, 914 (11th Cir. 1988) ("This Court has repeatedly noted the special care with which *pro se* litigants must be treated and noted that such litigants occupy a position significantly different from that occupied by litigants represented by counsel." (quotation marks and citation omitted)). Here, we conclude that Plaintiffs are not similarly situated to pro se litigants. Unlike pro se litigants, retained attorneys are legally trained, familiar with legal rules and procedures, and likely are more able to navigate e-filing systems. Additionally, the court holds retained attorneys to a more stringent standard than pro se litigants.

Instead of arguing that they are similarly situated to pro se litigants, Plaintiffs rely on *Tassian v. People*, 731 P.2d 672 (Colo. 1987), a Colorado Supreme Court case that found no rational basis for accepting personal checks from represented parties but not from pro se parties. There, the Colorado Supreme Court explained that "with respect to the prohibition against the pro se litigant's payment of a filing fee by personal check, the differences between pro se litigants and litigants represented by attorneys are so attenuated and illusory as to render the classification created by the chief judge's directive arbitrary and irrational." *Id.* at 676.

Here, the difference does not merely involve writing a check, which does not require any special training or experience. Instead, it implicates the requirements for electronically filing court documents. As described above, there are significant differences between attorneys who frequently file documents in courts and have completed the training to file documents electronically, and pro se parties who do not have the same training and may not have access to computers. The State has a rational basis for believing Plaintiffs are different from pro se litigants who are not required to pay the e-filing fee. In addition to the differences described above, Plaintiffs are required to pay the e-filing fee because, unlike pro se plaintiffs, Plaintiffs use the e-filing system. Only parties who use the e-filing system are required to pay the e-filing fee. Since pro se plaintiffs do not regularly use the e-filing system, they are distinguishable from Plaintiffs and others who use the e-filing system. Accordingly, we find that Plaintiffs' equal-protection claim fails because

20

Plaintiffs are not similarly situated to pro se parties who do not use the e-filing system.

## CONCLUSION

We affirm the district court's order dismissing Plaintiffs' right-to-counsel, access-to-the-courts, and equal-protection claims.

Entered for the Court


Gregory A. Phillips
Circuit Judge

21